[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 11405
The Plaintiffs, Anne Kamens, et al ("Resident Plaintiffs") and National Fairways Golf Partners Limited Partnership ("National Fairways"), brought separate appeals from the decision of the Town Plan and Zoning Commission of the Town of Fairfield ("Commission") granting, with conditions, an application for special exception to construct and operate a driving range and pro shop to service the driving range on property located at 2390 Easton Turnpike, Fairfield, Connecticut. The court, in the instant consolidated action, hereby dismisses both appeals, thereby upholding the decision rendered by the Commission.
The record contains the following facts. The Resident Plaintiffs, Anne Kames, et al, commenced an appeal on July 2, 1996, to challenge the granting of National Fairways' application for special exception for the following reasons: (1) the use proposed is a business, for profit, which is not permitted in an R-3 residence zone and does not qualify as a special exception under § 5.1.4(d) of the Town of Fairfield Zoning Regulations; (2) the driving range is not and accessory use, as defined under § 5.1.5 of the Zoning Regulations, to the valid, nonconforming, principal use of the site as a golf course; (3) the Commission failed to state its reasons for granting the application on its record; and (4) publication of notice of the Commission's decision was defective and renders the decision null and void. Plaintiff submitted a brief in support of its appeal on February 24, 1997.
National Fairways commenced its appeal on June 28, 1996, contesting three of the conditions imposed by the Defendant, Commission. They are the following: (1) the proposed lighting of the driving range facilities is not permitted . . .; (2) the hours of operation of the driving range shall be limited to dawn to dusk; and (3) the number of hitting stations shall be reduced to 36. (See Town Plan and Zoning Commission of the Town of Fairfield, Minutes of Meeting — June 11, 1996) National Fairways submitted it's appeal brief on August 29, 1997.
Both appeals were consolidated by order of the court on April 9, 2001 by (Brennan, J.) and on December 10, 1996 by (Maiocco, J.), respectively. The decision rendered herein shall apply with equal force and effect to both actions.
The applicable standard of review is well settled. Judicial review of the actions and decisions of a zoning commission is governed by Connecticut General Statutes §§ 8-9 and 8-8, rather than by the appeals provision of the Uniform Administrative Procedures Act ("UAPA") as contained in Conn. Gen. Statutes § 4-166, et seq. Ensign-BickfordCT Page 11406Realty Corporation v. Zoning Commission of the Town of Simsbury,245 Conn. 257, 263, 715 A.2d 702 (1998)., quoting Kaufman v. ZoningCommission, 232 Conn. 122, 129, 653 A.2d 798 (1995). Section 8-9
provides, in relevant part, that "appeal from zoning commissions . . . may be taken to the superior court. Section 8-8 explicitly governs appeals from decisions by any aggrieved person to the superior court in the judicial district in which the municipality is located. Conn. Gen. Statutes § 8-8(a). The superior court when reviewing zoning commission decisions, is limited to a determination of whether the commission acted arbitrarily, illegally or unreasonably. Raczkowski v.Zoning Commission of the Town of Naugatuck. et al, 53 Conn. App. 636,639, 733 A.2d 862 (1999). To do this, the court must engage in a review of the record to determine whether sufficient facts exist to support the Commission's decision. It must not, however, substitute its own judgment for that of the zoning commission and must not disturb decisions of local zoning commissions as long as honest judgment has been reasonably and fairly exercised. Baron v. Planning and Zoning Commission of the Town ofHaddam, 22 Conn. App. 255, 257, 576 A.2d 589 (1990); Whittaker v. ZoningBoard of Appeals, 179 Conn. 650, 654, 427 A.2d 1346 (1980); Molic v.Zoning Board of Appeals, 18 Conn. App. 159, 164, 556 A.2d 1049 (1989).
As mentioned, the Resident Plaintiffs detailed four specific grounds that are the basis of their appeal. The first concerns the nature of the business to be conducted on the subject property. The Plaintiffs claim that "[t]he proposed use is to be conducted as a business and for profit and therefore is not permitted in and R-3 zone". (See Resident Plaintiffs' Brief in Support of Appeal from Fairfield Town Plan and Zoning Commission dated February 24, 1997 at page 6). As such, the business would not be afforded special exception status under § 5.1.4 of the Fairfield Zoning Regulations. Plaintiffs argue that the City of Bridgeport ("City"), who owns the subject property, altered the nature of the use of the premises when it entered into a long-term management agreement ("Agreement") with National Fairways. (Return of Record, Item 41) Plaintiffs contend that the City has surrendered all control of the property to National Fairways by virtue of said Agreement. Plaintiffs are incorrect in both of their assertions.
Plaintiffs' argument with respect to this first point of appeal fails to recognize what is well settled in Connecticut law; zoning commissions are charged with the responsibility of interpreting their own regulations and applying them with liberal discretion. Conn. Gen. Stat. § 8-6. See also Reply Brief of the Town Plan and Zoning Commission of the Town of Fairfield dated September 26, 1997 at page 7-8. Such determinations are factual in nature and are properly considered by the commission in its role as fact finder. They are not to be considered by the court, which must instead determine "whether there is factual support for the CT Page 11407 board's decision, not for the contention of the appellant." Francini v.Zoning Board of Appeals, 228 Conn. 785, 791, 639 A.2d 519 (1994). See also Pascale v. Board of Zoning Appeals, 150 Conn. 113, 117, 186 A.2d 377
(1962) (Trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts.) The Resident Plaintiffs have put no evidence before the Commission which supports their contention that the business will be operated as a purely profit making venture. Nor have they carried their burden to show that the actions of the Commission were improper.Raczkowski, at 640.
In support of their position, the Commission submits that the provisions of § 5.1.4(a) — (c), read together, support their decision to permit a municipally owned, recreational facility regardless of its management arrangement. Such a reading of the zoning regulations does not rise to the level of being unreasonable, arbitrary or illegal. "The trial court can sustain the appeal of the plaintiffs only upon a determination that the decision of the commission was unreasonable, arbitrary or illegal." Baron, at 257; Schwartz v. Planning and ZoningCommission, 208 Conn. 146, 152, 543 A.2d 1339 (1988); McCrann v. TownPlanning Zoning Commission, 161 Conn. 65, 70-71, 282 A.2d 900 (1971). The judgment of the court must not be substituted for the judgment of the commission as long as the Commission has acted in accordance with the standard stated. See Baron at 257.
The Resident Plaintiffs' contention that by entering into the Agreement with National Fairways, the City changed the nature of the use of the subject property is wholly without merit. It is true that the City has surrendered its right to day-to-day management of the property. It is also true that the City specifically retained the power to review the actions and operations of National Fairways. (See Appeal Brief of the Defendant, National Fairways Golf Partners Limited Partnership, dated June 11, 1997 at pages 7-10.) In short, National Fairways is far from able to act autonomously. The Resident Plaintiffs cannot prevail on this point based on mere assertions and an absence of pertinent facts and!or evidence, demonstrating improper action by the board.
The second point on which the Resident Plaintiffs base their appeal asserts that the driving range is not an accessory use, as defined under § 5.1.5 of the Zoning Regulations, to the valid, non-conforming, principal use of the site as a golf course. (Plaintiffs' Appeal Brief at 21). As principal support for this contention, the Plaintiffs assert that if the use truly were accessory, then no special exception would have been necessary. Section 5.1.5 of the Zoning Regulations sets forth the definition of an accessory use. Plaintiffs in their reading of that section, claim that the language of the section was written very CT Page 11408 specifically, thereby leaving no latitude for reading additional uses into the Regulation. (See Plaintiff's Appeal brief at 22) Furthermore, Plaintiffs assert that National Fairways true intent is to operate the driving range as a second principal use on the site, creating a separate and significant source of revenue. Again, the record from the commission does not support these views.
"In general terms, an accessory use is a use that is customary and incidental to a permitted, primary use.Upjohn, at 89; Lawrence v. ZoningBoard of Appeals, 158 Conn. 509, 511-12, 264 A.2d 552 (1969). See alsoFox v. Zoning Board of Appeals of the Town of Westport, 146 Conn. 70
(1958) (Accessory use is one which is dependent upon or pertains to the principal or main use) and Beir Havurah v. Zoning Board of the City ofNorwalk, 177 Conn. 440 (1979) (Accessory use must be incidental and related to the primary use). Whether a particular use qualifies as an accessory use is ordinarily a question of fact for the zoning authority to be determined by it with liberal discretion. Lawrence, at 513-514. Remembering that Plaintiffs still bear the burden of proof, the record contains nothing to refute the quite logical and reasonable conclusion by the Commission that the proposed driving range qualifies as an accessory use to the principal use of the site as a golf course. This absence of supporting evidence for the assertion is fatal to Plaintiffs' claims as the court is powerless to reverse the decision of the Commission in the absence of evidence of unreasonable, arbitrary or illegal action by said Commission. Baron at 257.
Plaintiffs third point of appeal concerns the Commission's failure to state its reasons from granting the application on the record. (Plaintiff's Appeal Brief at 27) Conn. Gen. Stat. § 8-3 (c) states that an agency acting upon a special permit of special exception is required to give reasons for its actions. Under Gagnon v. Inland Wetlandsand Watercourses Commission, 213 Conn. 604, 607-8, 569 A.2d 1094 (1990), cited by the Resident Plaintiffs in their brief, when the Commission fails to state its reasons on the record, the reviewing court must search the record to determine those reasons and whether they suffice to justify the issuance of a special exception in this case.
Plaintiffs concede that the failure to state reasons on the record does not render the decision null and void. (Plaintiff's Appeal brief at 27-28) However, Plaintiffs allege, on page 28 of their brief, that a review of the record will not demonstrate any reasons in support of the Commission's decision sufficient to overcome the arguments presented by the Resident Plaintiffs at the public hearings or contained in their appeal brief. This contention is problematic. It assumes that the Commission reached its decision without giving any consideration to the Plaintiffs' opposing point of view. The Commission's decision, by its own CT Page 11409 words, flies in the face of such an argument, in that, as the Commission contends in its brief at page 18-19, the conditions applied were to protect against the use operating outside the parameters of a valid accessory use. Fairfield Zoning Regulations § 27.4 and Town Reply Brief at 7-8. Furthermore, the conditions themselves offer positive proof that the Commission intended to and did in fact consider Plaintiffs' opposition to the application in fashioning its approval of National Fairways application. The Commission's "reasons", while not explicitly stated, are apparent by inference in the conditions. The Plaintiffs have not demonstrated that the Commission engaged in any unreasonable, arbitrary or illegal activity in the process of granting the application. Instead the record provides evidence of a well-reasoned decision to grant the application.
The final point on which Plaintiffs' appeal is that publication of notice of the Commission's decision was defective in that it did not state where the conditions would be kept on file for review and, therefore, renders the decision null and void. Plaintiffs rely on the case of Carnese v. Planning and Zoning Commission, 1993 WL 256576, Superior Court, J.D. of Fairfield at Bridgeport, Docket No. CV93-0299969S (1993, Levin, J.) to support their claim. the reliance is misguided. Their interpretation of the holding in the Carnese case is wrong. Instead the standard employed by National Fairways should be used. The case law relied on by National Fairways focuses its attention on the actual sufficiency of the notice.
In it's reply brief, the Commission illustrates that the holding in Carnese does not say that notices lacking language describing where the conditions are kept on file are invalid, only that a notice which does not list where the conditions are kept on file was held to be valid. Plaintiffs have read language into the holding of the case that simply does not exist. National Fairways joined in the Town's interpretation of the holding in Carnese. Furthermore, National Fairways asserts that the proper standard of review is whether the notice sufficiently apprises an interested party of the nature of the action taken by the Commission so that and intelligent judgment with regard to a potential appeal may be made. Bridgeport Bowl-O-Rama v. Zoning Board of Appeals of the City ofBridgeport, 195 Conn. 276, 279 (1985). Additionally, Fuller, Land Use andPractice, Section 46.5, at page 749, counsels that notice should only be considered defective if it is misleading in some material way or if the notice goes beyond the scope of the hearing. Neither scenario is applicable here. Further authority cited by National Fairways in its brief as pages 20-21 is also instructive. The standard is such that even the failure of a commission to have all of the conditions of approval available for review in its office throughout the entire fifteen-day appeal period where the legal notice had stated that the application was CT Page 11410 approved with conditions was held not to make the notice of approval defective. Floch v. Planning and Zoning Commission of the Town ofWestport, 10 Conn. L. Rptr. 235, judgment affirmed, 38 Conn. App. 171
(1995). The above-stated authority coupled with the fact that the Resident Plaintiffs were not in fact prevented from taking an appeal due to the condition of the notice, weigh in support of this court upholding the validity of the Commission's notice as published.
National Fairways in its appeal alleges that three of the conditions imposed by the Commission should be removed from the granting of the application. In short, they concern the installation of lighting, the hours of operation and a reduction in the number of hitting stations. Section 8-2 of the Connecticut General Statutes entitle the zoning authority to impose "conditions necessary to protect public health, safety, convenience and property values and such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses". The record reflects that there was adequate cause for the Commission to limit or make conditional the granting of the application to ensure that the accessory use did not expand unreasonably and to address concerns relative to public health, safety and welfare as voiced by the Resident Plaintiffs. Imposing conditions was the Commission's way to address the concerns of the Plaintiffs. In light of this fact, the imposition of conditions was necessary. National Fairways has put forth no evidence that suggests that the contested conditions should removed. Therefore, all of the conditions imposed by the Commission should remain in place.
It is the conclusion of this court that the Commission acted properly in granting National Fairways application for special exception, with conditions. The proposed driving range constitutes a valid, accessory use, permitted in the zone. Conditions were necessary to protect against an unacceptable and/or impermissible enlargement of the use. For these reasons, both appeals are dismissed.[1]
DANIEL E. BRENNAN, JR., J.